Mark ANDERSON, Applicant–Appellant

v.

Richard PURSELL; Henry R. Sebesta and Mary M. Sebesta Revocable Trust; and C & K Properties, Inc., Opposers–Appellees

and

Division Engineer, Water Division 2, Appellee pursuant to C.A.R. 1(e).

No. 09SA119.

Supreme Court of Colorado, En Banc.

Dec. 13, 2010.

As Modified on Denial of Rehearing Jan. 10, 2011.*

* Justice Márquez does not participate.

Paul G. Anderson, LLC, Paul G. Anderson, Colorado Springs, Colorado, Attorneys for Applicant–Appellant.

Anthony L. Martinez, Esq., P.C., Anthony L. Martinez, Salida, Colorado, Attorneys for Opposer–Appellee Richard Pursell.

Jonathan S. Bender, Meghan N. Winokur, Holland and Hart, LLP, Denver, Colorado, Attorneys for Opposers–Appellees Henry R. Sebesta and Mary M. Sebesta Revocable Trust and C & K Properties, Inc.

Justice RICE delivered the Opinion of the Court.

Mark Anderson ("Anderson") challenges an April 3, 2009, water court order that granted attorney fees and costs to Henry R. Sebesta and Mary M. Sebesta Revocable Trust and C & K Properties, Inc. (collectively "Sebesta"), and Richard Pursell ("Pursell") for various stages of the litigation. We hold that the water court was correct in granting attorney fees and costs associated with the Final Decree to Pursell because he was the "prevailing party" under the parties' Water Agreement. Further, the water court was correct in both the award and the amount of attorney fees and costs to both Sebesta and Pursell for defending Anderson's Motion to Enforce because it lacked substantial justification under section 13–17–102(4), C.R.S. (2010). But, we hold that the water court incorrectly awarded attorney fees and costs to Sebesta and Pursell for defending Anderson's appeal and pursuing the underlying fee award. Therefore, we affirm in part, reverse in part, and remand to the water court to enter a judgment consistent with our opinion.

1. Hashimi is not a party to these proceedings.

2. At the time of the agreement, Sebesta and Anderson were the sole owners of the Eureka Ditch water right. The Water Agreement stated that it would "run with the land." Therefore, when Sebesta conveyed portions of his land and water right to Pursell in 2002 and Hashimi in 2005, they too became parties to the Water Agreement.

3. The Water Agreement specifically states:

## I. Facts and Procedural History

At this stage, this case involves a dispute over attorney fees. This attorney fee dispute arises from an ongoing clash over the Eureka Ditch water right, the procedural history of which is necessary to understand the attorney fee dispute now at issue.

### A. The Parties and the Water Right

The Eureka Ditch flows in turn through the properties of Sebesta, Diana and Wail Hashimi ("Hashimi"),[1] Pursell, and Anderson, with each landowner owning an interest in the water right. Anderson owns 50%, Sebesta and Hashimi each own 20%, and Pursell owns 10%. The Eureka Ditch is not a simple straight line canal. Instead, it is a complex hydrological system that flows through a series of ponds and lateral ditches on the parties' land. Despite the presence of the ponds, only Anderson has storage rights to store water on his land.

On September 12, 2000, Sebesta and Anderson entered into a Joint Water Use and Maintenance Agreement ("Water Agreement").[2] In this agreement, the parties established that Sebesta had the right to divert water from the Eureka Ditch so long as one-half of the water remained in the ditch to supply Anderson with his allocated share.[3] The parties also agreed that "[i]n the event of a dispute concerning the intent or construction of [the Water Agreement], the prevailing party shall be entitled to reasonable attorney's fees."

### B. Proceedings at the Water Court

Anderson submitted an application to the division engineer seeking to, among other

[Sebesta] shall have the right to divert water from their portion of the Eureka Ditch to irrigate [Sebesta's] properties and meadows; provided, however, that at least one-half of the water flowing in the Eureka Ditch shall remain in the main channel of such ditch to maintain the ditch flow, maintain pond levels, and to supply Anderson with the allocated share owned by Anderson.

things, adjudicate absolute water rights, change his portion of the Eureka Ditch water right to allow for pond storage and other uses, and provide a plan for augmentation to replace out of priority depletions. Sebesta and Pursell both opposed the application because they were concerned that if the water court approved the application, their shares of the water right would be harmed.

### 1. Injunction and Stipulation

Before the water court ruled on Anderson's application, Anderson moved for injunctive relief against Sebesta and Pursell claiming that he was not receiving his share of the water from the Eureka Ditch. Anderson argued that the reason for his shortfall was that Sebesta and Pursell had both added new ponds and expanded existing ones on their land, causing more water to sit in the ponds and less water to be delivered to Anderson. Sebesta responded to this motion but Pursell did not.

The water court granted the injunction in November 2003, and ordered Sebesta and Pursell to cease diverting and storing the water and to affirmatively deliver one-half of the flow of the Eureka Ditch to Anderson. In so doing, the water court ordered Sebesta and Pursell to by-pass their ponds to ensure that Anderson would receive his share. The water court also awarded attorney fees to Anderson for the injunction.

Sebesta filed a timely Motion to Alter, Amend or Vacate the injunction. Pursell also filed a Motion to Alter, Amend or Vacate, but did so after the fifteen-day deadline. Before the water court ruled on either of the motions, Anderson and Sebesta entered into a stipulation in April, 2004. In the stipulation, Anderson agreed to dismiss the water court's injunction order against Sebesta. In exchange, Sebesta dismissed his opposition to Anderson's application. Sebesta and Anderson also agreed to reasonably accommodate each other's ownership interests in times of low flow and to cooperate in constructing and installing additional structures to facilitate the delivery of Anderson's 50% interest. The stipulation did not require Sebesta to by-pass the ponds on his land. The water court accepted the stipulation.

Neither the injunction nor the stipulation affected Anderson's pending application.

### 2. Final Decree

The water court ultimately held a trial on Anderson's application in November 2004, and issued a decree on the matter ("Final Decree") on February 10, 2005. The Final Decree incorporated the Water Agreement and granted Anderson much of what he requested in his application. The water court ruled, however, that Anderson's share of the water right was only in the main channel of the Eureka Ditch, that he was to bear transit losses, and that Pursell and Sebesta were not required to by-pass the ponds on their land.[4]

Anderson submitted a timely motion for costs under C.R.C.P. 54(d). Pursell, on the other hand, submitted a motion for costs and attorney fees, alleging that he was the "prevailing party" under the Water Agreement, but did so on November 2, 2005, over eight months after the fifteen-day deadline. The water court denied both motions on December 26, 2006—Pursell's because it was late and Anderson's because he was not the prevailing party. With regard to Anderson not being the prevailing party, the water court stated that "[w]hile Anderson obtained some of the relief he requested, a substantial portion of the trial surrounded the interpretation of certain aspects of the [Water Agreement] which were determined contrary to Anderson's position."

---

4. Specifically, the Final Decree stated:
Pursuant to the stipulation with Sebesta, the rights of [Anderson], Sebesta and Pursell in the Eureka Ditch water are governed by the terms of the Water Agreement. [Anderson's] allocation shall be delivered through the main chan-

nel subject to all transit losses. The Court specifically concludes that there are no "first" and "second" branches to the main channel of the Eureka Ditch and [Anderson] has an interest only in the main channel of the Eureka Ditch.

Pursell made a timely motion for reconsideration of this order.

### 3. Motion to Enforce

In October 2006, because he was again not receiving his share of the water right, Anderson filed a Motion to Enforce seeking to compel Pursell to comply with the injunction order and Sebesta to comply with the stipulation. Anderson also asked the water court to modify the stipulation to require Sebesta to by-pass the ponds on his land.

The water court denied this motion in an order dated December 18, 2006. It ruled that the Final Decree took precedence over the injunction order and that Sebesta and Pursell were not the reasons that Anderson was not receiving his water. Ultimately, it held that Anderson's motion was "without merit and constitute[d] a substantially frivolous claim" and awarded attorney fees to Sebesta and Pursell.

Anderson filed a notice of appeal with this Court. But, after obtaining multiple extensions of time to file his opening brief, Anderson moved to dismiss the appeal. We dismissed the appeal with prejudice and remanded to the water court without any directions concerning attorney fees.

### 4. Attorney Fees

After we remanded to the water court, the water court held a hearing on attorney fees associated with the Motion to Enforce. The water court made its ruling in an order dated April 3, 2009, and granted costs and attorney fees to Sebesta and Pursell. In addition to fees and costs associated with the Motion to Enforce, it granted Pursell's motion for reconsideration that he filed after being denied costs and attorney fees associated with the Final Decree. Further, the water court granted Sebesta and Pursell the costs and attorney fees that they incurred as a result of Anderson's abandoned appeal of the Motion to Enforce and in defense of Sebesta's and Pursell's motions for costs and fees.

In total, the water court awarded $51,635 in attorney fees and $833.82 in costs to Pur-sell and $22,493 in attorney fees and $2,300.50 in costs to Sebesta.

### 5. Subsequent Proceedings

While this appeal has been pending, the water court has made findings involving the same parties and issues. First, in September 2009, in a case brought against Pursell by the State Engineer, the water court ordered Pursell to release all water from the ponds on his property along the Eureka Ditch until he obtained a storage right. Second, in November 2009, the water court entered an order confirming that Anderson complied with the terms of the Final Decree.

Anderson now appeals the April 3, 2009 order of the water court granting Sebesta and Pursell costs and attorney fees for the Motion to Enforce and the appeal, and granting Pursell costs and attorney fees for all stages of the litigation.

## II. Analysis

### A. Pursell's Costs and Attorney Fees Stemming from the Final Decree

When the water court granted attorney fees to Sebesta and Pursell for the Motion to Enforce, it also granted Pursell's motion to reconsider its denial of costs and fees from the Final Decree. Anderson argues that the water court abused its discretion in granting Pursell's motion for reconsideration and awarding Pursell costs and attorney fees for all previous stages of the litigation. He argues that because Pursell originally filed his motion for costs and fees after the fifteen-day time limit set forth in C.R.C.P. 121, section 1–22, the water court could not grant the motion. Further, he asserts that Pursell was not a prevailing party in a dispute under the Water Agreement, and thus, that costs and attorney fees were not proper. We disagree.

We review the decision to award costs and attorney fees under an abuse of discretion standard. *School Dist. No. 12 v. Sec. Life of Denver Ins. Co.*, 185 P.3d 781,

787 (Colo.2008) (citation omitted). A trial court abuses its discretion if its decision is "manifestly arbitrary, unreasonable, or unfair." *Colo. Nat'l. Bank of Denver v. Friedman*, 846 P.2d 159, 167 (Colo.1993) (citations omitted). Further, the party requesting fees has the burden of proving that it is entitled to them. *Am. Water Dev., Inc. v. City of Alamosa*, 874 P.2d 352, 383 (Colo.1994) (citations omitted).

### 1. Prevailing Party under the Water Agreement

■ The injunction, Final Decree, and all related motions were a result of a dispute under the Water Agreement. The Water Agreement states that "[i]n the event of a dispute *arising* concerning the intent or construction of this Agreement, the prevailing party shall be entitled to reasonable attorney's fees" (emphasis added). We have interpreted the phrase "arising out of" to mean "to originate from, grow out of, or flow from." *City & Cnty. of Denver v. Gonzales*, 17 P.3d 137, 140–41 (Colo.2001) (internal quotations omitted) (interpreting a fee shifting provision in a statute); *see also Bedard v. Martin*, 100 P.3d 584, 593 (Colo.App.2004) (interpreting a fee shifting provision in a real estate contract). In this case, the language in the Water Agreement is sufficiently similar to "arising out of" and we see no reason why that definition is not applicable here, making this a "dispute arising concerning the intent or construction of the [Water Agreement]."

Although Anderson's original application did not specifically involve the Water Agreement, nearly every other motion and order in this case referenced and incorporated the Water Agreement. Even Anderson agrees that his motion for an injunction was made in part to enforce and interpret the Water Agreement. The Final Decree also interpreted and incorporated the Water Agreement. In the Final Decree, the water court clarified what it meant to require one-half of the water to remain in the main part of the Eureka Ditch. Therefore, we conclude that this was "a dispute concerning the intent or construction of [the Water Agreement]."

■ We further conclude that Pursell was the "prevailing party" under this provision. Like the decision to award attorney fees, we review determinations of which party is the "prevailing party" under a fee shifting provision for an abuse of discretion. *Dennis I. Spencer Contractor, Inc. v. City of Aurora*, 884 P.2d 326, 328 n.6 (Colo.1994) (citing *Smith v. Freeman*, 921 F.2d 1120, 1122 (10th Cir.1990)). We use this standard because the trial court is in the best position to observe the course of the litigation and to determine which party ultimately prevailed. *Archer v. Farmer Bros.*, 90 P.3d 228, 231 (Colo.2004) (citations omitted).

■ In order to be a "prevailing party," a party must succeed on a significant issue in the litigation and achieve some of the benefits sought. *In re Water Rights of Bd. of Cnty. Comm'rs of Cnty. of Arapahoe*, 891 P.2d 981, 984 (Colo.1995) (citing *Odenbaugh v. Cnty. of Weld*, 809 P.2d 1059, 1063 (Colo. App.1990)). But, "[t]he issue on which the party prevails need not be the central issue in the litigation, only a significant one." *Id.* (citations omitted). The court should examine the overall context of the case, *Munoz v. Measner*, 214 P.3d 510, 515 (Colo.App.2009), and should consider where in the case the parties spent the majority of their time and resources, *Archer*, 90 P.3d at 232.

In *Archer*, we held that a party was a "prevailing party" under C.R.C.P. 54(d) and entitled to costs even though there had been an adverse judgment against it. *Id.* There, although the other party had prevailed on one claim, we determined that the "vast majority of the time and resources of the litigation were devoted to" the claims that were dismissed against the party. *Id.* Thus, we held that the party was entitled to costs as the prevailing party despite the adverse judgment against it. *Id.*

Here, the bulk of the litigation involved whether or not Sebesta and Pursell were required to by-pass the ponds on their properties so that Anderson would receive his share of the water right in accordance with the Water Agreement. There was little to

no contention over the other parts of the application. The water court ultimately ruled that the Water Agreement did not require Sebesta and Pursell to by-pass the ponds on their properties. Thus, because Pursell succeeded on his main objection to the application and the only issue that was significantly litigated, the water court was correct in determining that he was the "prevailing party" in a "dispute arising concerning the intent or construction of the [Water Agreement]."

## 2. Timeliness

 Anderson argues that, even if Pursell was the "prevailing party" under the Water Agreement, the water court erred in awarding costs and attorney fees to Pursell for two reasons: first, because he was late in filing the motion and second, because the motion should have been denied as a matter of law because the water court did not rule on the motion within sixty days in accordance with C.R.C.P. 59(j). C.R.C.P. 121, section 1–22 states that a party claiming costs and attorney fees shall make a motion for such "within 15 days of the entry of order or judgment or within such greater time as the court may allow." A trial court, however, is not required to deny a motion for costs and attorney fees if it is filed outside of the fifteen-day time limit, even if the submitting party does not request an extension of time. *US Fax Law Ctr., Inc. v. Henry Schein, Inc.,* 205 P.3d 512, 515–16 (Colo.App.2009) (citing *In re Marriage of Wright,* 841 P.2d 358, 361 (Colo.App.1992)). Further, requests for costs and attorney fees are outside the purview of C.R.C.P. 59(j)'s requirement that a

motion be denied as a matter of law if it is not decided on within sixty days. *See Tallitsch v. Child Support Servs., Inc.,* 926 P.2d 143, 146 (Colo.App.1996) (citations omitted) ("issues concerning recovery of attorney fees not sought as damages … are outside the purview of C.R.C.P. 59"); *see also Baldwin v. Bright Mortg. Co.,* 757 P.2d 1072, 1073–74 (Colo.1988) (a decision is final and appealable despite outstanding attorney fee issues).

Thus, the water court did not abuse its discretion in granting Pursell's motion for reconsideration, despite the original motion for costs and attorney fees being filed outside of the fifteen-day deadline, and properly granted Pursell costs and attorney fees related to the Final Decree.[5]

## B. Sebesta and Pursell's Costs and Attorney Fees under Section 13–17–102(4) Associated with the Motion to Enforce

The water court denied Anderson's Motion to Enforce the injunction and Water Agreement and awarded Sebesta and Pursell costs and attorney fees under section 13–17–102(4), C.R.S. (2010) because it determined that the motion was "without merit" and "substantially frivolous." Anderson argues that, in light of subsequent findings in this case and an order in a related case brought by the State Engineer against Pursell, the water court erred in holding that the motion was substantially frivolous and awarding attorney fees. We disagree. First, the Final Decree took precedence over the injunction order. Second, Anderson cannot use subsequent decisions to argue that his earlier motion was not substantially frivolous.[6]

---

5. Anderson also argues that because Pursell filed his Motion to Alter, Amend or Vacate the injunction order late, the water court did not have jurisdiction to have a hearing on the matter and, even if it did, because it never decided the matter, it was denied as a matter of law under C.R.C.P. 59(j). Under the same reasoning above, it was within the water court's discretion to hear the motion. Further, Anderson makes no clear argument explaining how Pursell's Motion to Alter, Amend or Vacate affects the ultimate judgment on attorney fees. As discussed in more detail below, the Final Decree takes precedence over the injunction as the final order in the case.

*See Phoenix Capital, Inc. v. Dowell,* 176 P.3d 835, 839 (Colo.App.2007). Therefore, the outcome of the injunction plays no part in the ultimate decision on the application in the Final Decree.

6. At the outset, it is important for us to note that Anderson's methods for obtaining his relief here are irregular. First, the more logical course of action for Anderson would have been to appeal the Final Decree instead of moving to enforce an outdated injunction. Second, to the extent that Anderson asks us to review the denial of the Motion to Enforce, we lack jurisdiction because Anderson failed to preserve the issue. He chose

Section 13–17–102(4) states that a "court shall assess attorney fees if, upon the motion of any party or the court itself, it finds that an attorney or party brought or defended an action, or any part thereof, that lacked substantial justification." An action lacks substantial justification when it is "substantially frivolous, substantially groundless, or substantially vexatious." *Id.* A claim is substantially frivolous if the proponent cannot present a rational argument based on the evidence or law in support of that claim. *Stepanek v. Delta Cnty.*, 940 P.2d 364, 369 (Colo.1997).

### 1. The Final Decree Made the Injunction Order Obsolete

 In his briefs, Anderson attempts to persuade us that the injunction was still valid and enforceable against both Pursell and Sebesta. With regard to Sebesta, the Stipulation Agreement clearly dismissed the injunction. Thus, there was no way that Anderson could enforce it against Sebesta. *See USI Props. E., Inc. v. Simpson*, 938 P.2d 168, 173 (Colo.1997) ("A party's participation in a stipulation incorporated into a decree precludes that party from advancing legal contentions contrary to the plain and unambiguous terms contained therein.").

 Against Pursell, the result is the same because the Final Decree takes precedence over the injunction. A preliminary injunction is a remedy that is designed to preserve the status quo and "protect a plaintiff from sustaining irreparable injury and to preserve the power of the district court to render a meaningful decision following a trial on the merits." *Rathke v. MacFarlane*, 648 P.2d 648, 651 (Colo.1982). When a trial court grants or denies a preliminary injunction, it is not adjudicating the ultimate rights of the parties. *Phoenix Capital, Inc. v. Dowell*, 176 P.3d 835, 839 (Colo.App.2007). "[F]indings made by a trial court after a preliminary injunction hearing are not determinative of

the ultimate merits of the case." *Id.* (citing *Carroll v. Stancato*, 144 Colo. 18, 19–20, 354 P.2d 1018, 1019 (1960)). Instead, the trial court preserves its ability to render a decision after a full trial on the merits. *Id.*

In *Ireland v. Wynkoop*, the court of appeals held that an injunction that pertained to matters that had subsequently proceeded to a final judgment was no longer in effect. 36 Colo.App. 205, 224–25, 539 P.2d 1349, 1361 (1975). The same situation is present here; the same matters in the injunction ultimately proceeded to a final judgment in the Final Decree. Therefore, because the injunction was no longer binding on either Sebesta or Pursell, we hold that Anderson's Motion to Enforce the injunction was substantially frivolous.

### 2. The Effect of Subsequent Decisions

Anderson attempts to justify his Motion to Enforce with two subsequent water court decisions. The first is a an order from a separate case, *In re Pursell*, 09CW05, dated September 14, 2009, ordering Pursell to drain the ponds on his property and to cease diversion and storage until he obtained a storage right. The second is an order in this case, dated November 30, 2009, confirming that Anderson complied with the requirement in the Final Decree that he conduct a ditch loss analysis of the Eureka Ditch.

Those orders, however, were not and are not at issue in relation to the determination of whether Anderson's Motion to Enforce was substantially frivolous. The order requiring Pursell to drain his ponds and cease storing and diverting water involved general principles of water law, not the Water Agreement, which was at issue in the injunction and Motion to Enforce. It was a result of the State, not Anderson, filing a complaint against Pursell. Therefore, that order is not applicable as justification for the validity of the Motion to Enforce.

The order confirming that Anderson complied with the Final Decree is also inapplica-

not to pursue that appeal and we dismissed it with prejudice, precluding us from revisiting it now.

ble. The Motion to Enforce did not pertain to the Final Decree; it was attempting to enforce the injunction. Anderson's adherence to certain requirements in the decree has no bearing on whether or not the Motion to Enforce lacked substantial justification. Therefore, Anderson's argument that the subsequent orders showed that his Motion to Enforce did not lack substantial justification is unfounded.

### C. Amount of Attorney Fees

■ Anderson argues that, even if the water court correctly awarded attorney fees and costs to Sebesta and Pursell, it erred in determining the amount. He argues that the water court erred because it did not provide a detailed description of the factors in section 13–17–103, C.R.S. (2010) and that the amount that they awarded was not appropriate.

■■ Section 13–17–103 mandates that, in determining the amount of an attorney fee award, the court shall specifically set forth the reasons for the award and the amount of the award and, in so doing, shall consider specific enumerated factors. Although the trial court may not make conclusory statements that a claim lacks substantial justification, it is only required to discuss the relevant factors of section 13–17–103. *In re Marriage of Aldrich*, 945 P.2d 1370, 1379 (Colo.1997) (citations omitted). If none of the factors are specifically at issue, then the trial court is under no obligation to issue specific findings with regard to those factors. *See Parker v. Davis*, 888 P.2d 324, 326–27 (Colo.App.1994) (citing *Sullivan v. Lutz*, 827 P.2d 626, 627–28 (Colo.App.1992)).

Here, the water court did not make a bald assertion as to why Anderson's Motion to Enforce was substantially frivolous. Instead, it discussed why the Final Decree controlled over the injunction. This statement that the injunction was no longer valid was sufficient for a finding that the Motion to Enforce it was without merit.[7]

■ With regard to calculating the dollar amount, the water court also acted correctly. To calculate a reasonable fee, a trial court shall start by multiplying the number of hours reasonably expended on the matter by a reasonable hourly rate. *Am. Water Dev., Inc. v. City of Alamosa*, 874 P.2d 352, 386 (Colo.1994) (citations omitted). In determining a reasonable hourly rate, the trial court should look at the rates charged by attorneys of comparable skill, experience, and reputation in light of community standards in a reasonable community. *Id.* at 386–87 (citations omitted).

Anderson argues that the relevant community was Pueblo, Colorado, not Denver, Colorado, and that the rate for one of Sebesta's attorneys should be discounted accordingly. He relies in part on *Ramos v. Lamm*, 713 F.2d 546 (10th Cir.1983) *overruled on other grounds by Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987). That case, however, does not support his proposition. *Ramos* dealt with a civil rights claim brought by a prisoner in Cañon City, Colorado. *Id.* at 550. The Tenth Circuit stated that the case could "be handled by reasonably competent trial lawyers in *Denver* or any other metropolitan area." *Id.* at 555 (emphasis added). We believe that it was appropriate for the water court to choose Denver as the relevant community and to honor a reasonable rate charged by a Denver attorney.

### D. Fees and Costs for Anderson's Abandoned Appeal

■ Anderson argues that the water court erred in granting Sebesta and Pursell

---

7. In its denial of Anderson's Motion to Enforce and in finding that it was substantially frivolous, the water court noted that Anderson in part brought on his drought himself because he did not perform a transit loss analysis as required by the Final Decree. Anderson asserts that this was incorrect because the water court's November 30, 2009 order stated that he complied with that part of the Final Decree. Although Anderson did submit a supplement after the Final Decree, that supplement relied on an analysis performed in 2004. He did not submit a new analysis until August 4, 2009, well after the Motion to Enforce was denied.

the attorney fees and costs that they incurred in defending his abandoned appeal of the denial of the Motion to Enforce. C.A.R. 38(d), the only rule directly applicable to attorney fees on appeal, states that "[i]f the appellate court shall determine that an appeal is frivolous, it may award just damages and single or double costs to the appellee." C.A.R. 39.5 provides the procedure for this and states that "[i]f attorney fees are otherwise recoverable for the particular appeal, the party claiming attorney fees shall specifically request them, and state the legal basis therefore, in the party's principal brief in the appellate court." In this case, however, Anderson never filed a brief and instead decided to abandon the appeal, dismissing it with prejudice.

Sebesta and Pursell argue that, based on numerous prior cases, when a party has properly been awarded attorney fees prior to an appeal, it should also be awarded attorney fees for defending the appeal. *See Mau v. E.P.H. Corp.*, 638 P.2d 777, 781 (Colo.1981); *Martinez v. Steinbaum*, 623 P.2d 49, 55 (Colo.1981); *Kennedy v. King Soopers Inc.*, 148 P.3d 385, 390–91 (Colo.App.2006); *Levy–Wegrzyn v. Ediger*, 899 P.2d 230, 233 (Colo.App.1994). Anderson, on the other hand, cites cases holding that attorney fees under section 13–17–102 for an appeal are only appropriate if the appeal itself is frivolous. *See Padilla v. Ghuman*, 183 P.3d 653, 665 (Colo.App.2007); *Front Range Home Enhancements, Inc. v. Stowell*, 172 P.3d 973, 977 (Colo.App.2007).

We need not opine as to which method we believe is correct or whether Anderson's abandoned appeal was or was not frivolous. Despite obtaining multiple extensions of time, Anderson never filed an opening brief. Rather, he asked us to dismiss his appeal with prejudice. Without a brief or arguments, there is no way for us to determine if the appeal was or was not frivolous. Similar-

ly, there is no reason why Sebesta and Pursell should have incurred any attorney fees in defending Anderson's abandoned appeal because Anderson did just that, abandoned it, before filing an opening brief. Accordingly, we hold that Sebesta and Pursell are not entitled to attorney fees associated with Anderson's abandoned appeal.

### E. Fees and Costs Associated with Resolving the Attorney Fee Issue

Lastly, Anderson argues that the water court erred in granting Sebesta and Pursell costs and attorney fees for resolving the fee and cost issue stemming from the Motion to Enforce. Costs and attorney fees are only appropriate in a motion for attorney fees under section 13–17–102 if the trial court finds that the defense to the motion lacked substantial justification. *Foxley v. Foxley*, 939 P.2d 455, 460 (Colo.App.1996); *Parker v. Davis*, 888 P.2d 324, 327 (Colo.App.1994) (citations omitted).

Sebesta and Pursell argue that if a party succeeds on its underlying claim for attorney fees, it should get costs and attorney fees associated with pursuing that award. The cases that they cite for this proposition, however, do not deal with the specific situation that we are faced with here under section 13–17–102. *See In re Marriage of Eggert*, 53 P.3d 794, 797 (Colo.App.2002);[8] *Schmidt Constr. Co. v. Becker–Johnson Corp.*, 817 P.2d 625, 627–28 (Colo.App.1991); *Mau*, 638 P.2d at 781. Accordingly, we see no reason to overturn the court of appeals' precedent in *Foxley* and *Parker* and we refuse to allow an award of costs and attorney fees absent a finding that a defense to a motion for costs and attorney fees is frivolous.

Sebesta and Pursell assert that portions of Anderson's challenge to their motion for attorney fees were frivolous because he contin-

---

8. Although *Eggert* does involve section 13–17–102, it is in the context of fees against a parenting coordinator. 53 P.3d at 795. It gives no separate discussion regarding appellate attorney fees and instead combines the assertion into an

all inclusive statement allowing attorney fees for all stages of the related litigation if, on remand, the trial court determines that attorney fees are appropriate. *Id.* at 797.

ued to challenge the water court's denial of the Motion to Enforce. That denial, however, was the underlying reason for the fee issue and references to it were relevant and, therefore, not frivolous.

Therefore, Sebesta and Pursell are not entitled to the costs and attorney fees that they incurred in pursuit of the fee and costs issue related to the Motion to Enforce.

 Sebesta and Pursell also ask for the attorney fees that they have incurred in defending this appeal. Because we find that Anderson's defenses to the successful portions of Sebesta and Pursell's motion were not frivolous, Sebesta and Pursell are not entitled to these attorney fees.

### III. Conclusion

We hold that Pursell was entitled to costs and attorney fees associated with the application and Final Decree because he was the prevailing party under the Water Agreement. The water court did not abuse its discretion in allowing Pursell's motion for costs and attorney fees after the fifteen-day deadline. The water court was also correct in awarding costs and attorney fees to both Sebesta and Pursell for defending Anderson's Motion to Enforce because it lacked substantial justification under section 13–17–102(4). Lastly, the water court erred in granting attorney fees and costs to Sebesta and Pursell for their work associated with Anderson's abandoned appeal and the fee issue itself.

We remand to the water court to enter a judgment of the amount of attorney fees to be awarded consistent with our opinion. Further, pursuant to C.A.R. 37, we instruct that the water court calculate post-judgment interest from the date of the original judgment.

Justice MÁRQUEZ does not participate.