24CA1291 Hi-Point Home v Luman 12-24-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA1291
El Paso County District Court No. 22CV32033
Honorable Gregory R. Werner, Judge

Hi-Point Home Builders, LLC, a Colorado limited liability company,

Plaintiff-Appellant,

v.

John Paul Luman and Nicole L. Luman,

Defendants-Appellees.

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE WELLING
Grove and Johnson, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced December 24, 2025

Ranson & Kane PC, Jason P. Kane, Denver, Colorado, for Plaintiff-Appellant

Robinson & Henry, P.C., Alicia M. Reinken, Highlands Ranch, Colorado, for Defendants-Appellees

¶ 1    Hi-Point Home Builders, LLC (Hi-Point), appeals the trial court's order denying its breach of contract claim against John and Nicole Luman for the construction and purchase of a home. We affirm.

## I.    Background

¶ 2    In June 2021, the parties entered into a contract whereby Hi-Point would construct a custom home for the Lumans for a purchase price of $1,087,000, plus the costs of any special designs or add-ons that the Lumans requested. The Lumans requested several such changes that, by May of 2022, had raised the price to $1,105,392. In conjunction with the execution of the contract, the Lumans paid Hi-Point $10,000 in earnest money and a $3,500 deposit for the land the house would be built on.

¶ 3    Because John Luman is a veteran, the Lumans intended to finance the purchase of the home through a Department of Veterans Affairs (VA) loan. The VA requires that every VA loan include an "escape clause." A VA loan escape clause allows a homebuyer to cancel their contract — and recoup their earnest money — if the house being purchased appraises for less than the

sales price.  The contract between the parties contained such a clause.

¶ 4     The house was to be completed by August 30, 2022.  By June 2022, the Lumans had grown unhappy with some of Hi-Point's work on the house.  For example, the Lumans complained that lights, windows, a cabinet door, and rounded corners on the inside of the house weren't what they wanted.  Then, when it was time to install the septic system — a project that Hi-Point had budgeted at $18,000 — the quote came back at $66,000.

¶ 5     John Luman was upset about the discrepancy, and, on June 27, he sent an email to Hi-Point listing many of the Lumans' complaints about the construction project, including the unexpectedly high septic system bid.  Hi-Point responded to that email on the same day, explaining that (1) the Lumans had agreed to many of the details they complained about; (2) they could pay extra to change some of them; and (3) Hi-Point was trying to decrease the cost of the septic system.

¶ 6     Nevertheless, two days later, on June 29, John Luman sent another email purporting to terminate the contract between the Lumans and Hi-Point.  The email read as follows:

> This will serve as the official buyers termination notice for the purchase contract between Hi-Point Homes and John and Nicole Luman for [the] property [in] Colorado Springs, Co 80831. This notice is being provided in accordance with page 28, section 11.2 of such contract. Further documentation can be provided upon request.

¶ 7 After receiving the Lumans' June 29 termination email, Hi-Point began making changes to the home that it believed would make the home easier to sell on the open market. Despite making significant changes following the Lumans' termination email, Hi-Point also sent the Lumans a letter through counsel on July 15 stating that Hi-Point still expected the Lumans to fulfil their obligations under the contract.

¶ 8 On August 2, the Lumans arranged to have the house appraised by a VA appraiser, John Freeman. The adjusted purchase price at that time, including Hi-Point's additional changes, was $1,106,400, and the VA escape clause gave the Lumans the right to terminate the contract if the home appraised below that amount. The Lumans provided Freeman with several other homes as comparables, but none of those comparables were priced over $1 million. Ultimately, Freeman appraised the home at

$1.1 million — $6,400 less than the sales price.  Because the home appraised for less than the sales price, on August 17, 2022, the Lumans exercised their rights under the VA loan escape clause to terminate the contract.

¶ 9     In November 2022, Hi-Point sued the Lumans for breach of contract.  The Lumans asserted counterclaims, alleging, among other things, that Hi-Point had breached the contract.[1]

¶ 10     In May 2023, the matter proceeded to a three-day bench trial on the parties' competing breach of contract claims.  The issues before the trial court included both parties' claims that the other party had breached the contract.  Hi-Point was able to sell the house to different buyers shortly before the trial began in May 2023 for $1,168,149.21.  Still, at trial, Hi-Point claimed damages of $45,980.46 due to extra carrying costs.

¶ 11     In a thorough and detailed written order, the trial court determined that neither party breached the contract.  In rejecting

---

[1] The Lumans also asserted a claim against Hi-Point under the Colorado Consumer Protection Act.  That claim was dismissed, and the dismissal of that claim isn't being appealed.

Hi-Point's breach of contract claim against the Lumans, the court made extensive findings, including the following:

- The Lumans' June 29 email purporting to terminate the contract was "ineffectual" in doing so because it wasn't in compliance with the notice requirements of section 11.1.

- At all times preceding the June 29 email, the Lumans were in compliance with their contractual obligations, including having paid for every change they had requested to the design of the house.

- Following the June 29 email, the only performance under the contract that remained for the Lumans was to purchase the home. So the Lumans never materially breached the contract.

- After the Lumans' last requested change to the original design of the house, the adjusted sales price was $1,105,392.

- After all the changes Hi-Point made to the home to make it more marketable, the adjusted sales price of the house was similar — $1,106,400.

5

- The VA loan escape clause allowed the Lumans to terminate the contract without suffering the penalty of losing their earnest money and without further obligation to purchase the house if it appraised for less than the sales price.

- The house appraised for $1.1 million, which was less than the sales price, permitting the Lumans to invoke the VA loan escape clause.

- Because the Lumans properly exercised their rights under the VA loan escape clause, they didn't breach the contract.

- The Lumans would have purchased the home had it appraised at or above the sales price.

¶ 12 Based on these findings, the court entered judgment in favor of the Lumans and against Hi-Point on Hi-Point's breach of contract claim against the Lumans. It also awarded the Lumans the $13,500 of earnest money they paid to Hi-Point when they signed the contract. Last, the court found that the Lumans were the prevailing parties and awarded them their costs associated with the litigation. Only Hi-Point appeals.

## II.    Issues On Appeal

¶ 13    Hi-Point argues that the trial court erred by (1) determining that the Lumans' June 29 purported termination email wasn't a material breach of the parties' contract; (2) ruling that the Lumans weren't barred from invoking the VA loan escape clause to terminate the contract due to their prior material breach; (3) failing to address Hi-Point's argument that the Lumans violated their implied duty of fair dealing with respect to their invocation of the VA loan escape clause; and (4) determining that the Lumans were the prevailing party and awarding them their costs.  We address and reject Hi-Point's arguments in turn below.

### A.    The Lumans Didn't Materially Breach the Contract

¶ 14    Hi-Point first argues that the trial court erred by failing to conclude that Lumans were the first party to materially breach the contract based on the record and its findings, including that when the Lumans sent the June 29 email they didn't have any legal or factual justification for terminating the contract.  We disagree that the court erred.

### 1. Standard of Review

¶ 15　Generally, whether a party has breached a contract and whether that breach is material are questions of fact that we review for clear error. *Gravina Siding & Windows Co. v. Gravina*, 2022 COA 50, ¶ 14. When, however, there are no material facts in dispute, whether a party has materially breached a contract becomes a question of law which we review de novo. *One Creative Place, LLC v. Jet Ctr. Partners, LLC*, 259 P.3d 1287, 1289 (Colo. App. 2011).

### 2. Analysis

¶ 16　With respect to Hi-Point's breach of contract claim against the Lumans, the court found that (1) a contract between the parties existed; (2) the purported grounds for termination set forth in the June 29 email didn't provide the Lumans with a legal or factual basis for terminating the contract; (3) the Lumans had performed all of their obligations under the contract until they invoked the VA loan escape clause on August 17, 2022, including paying for change orders that they had requested; and (4) the Lumans would have completed the purchase of the home, notwithstanding the representations set forth in the June 29 email, had it appraised at

or above the purchase price. Based on these factual findings, the court concluded that the Lumans didn't "breach . . . much less material[ly] breach" the contract.

¶ 17    Hi-Point argues that this legal conclusion is irreconcilably inconsistent with the trial court's conclusion that the Lumans' complaints which prompted the June 29 purported termination email didn't provide them with a legal or factual basis for terminating the contract. After all, Hi-Point argues, that's why the court found the June 29 email's "purported" termination was "ineffectual." We agree, in part, with Hi-Point. We agree that the court's findings that the Lumans didn't breach the contract and that they improperly tried to terminate it aren't consistent. But we disagree that the court erred in concluding that the Lumans didn't *materially* breach the contract. Unfortunately for Hi-Point, it's the latter point that is dispositive of this appeal.

¶ 18    When determining if a party has materially breached a contract, the analysis "turns upon the importance or seriousness of the breach and the likelihood that the injured party nonetheless received, or will receive, substantial performance under the contract." *Interbank Invs., L.L.C. v. Vail Valley Consol. Water Dist.,*

9

12 P.3d 1224, 1228 (Colo. App. 2000). At the end of the day, whether the breach was material turns on whether the Lumans would have performed the remaining obligation under the contract had the home appraised at or above the sales price. That's a question of fact that the trial court resolved against Hi-Point.

¶ 19 The essence of the agreement was for the purchase of a custom-built home and for the cost of any changes to the design of the home the Lumans requested along the way. The court found that the Lumans had performed their contractual obligations by paying for all the changes up to the time that they sent the June 29 email. So, at least until the June 29 email, Hi-Point had received substantial performance of the contract from the Lumans.

¶ 20 That leaves open the question of whether the court erred by concluding that the June 29 email (which was never withdrawn) wasn't a *material* breach of the parties' contract. In this regard, the court found:

> Hi-Point has failed to prove any material breach on the part of the Lumans. It is true John Luman sent a letter terminating the contract on June 29, 2022. However, up until that time, there is no dispute the Lumans paid for every change order that had been submitted . . . . The time for any other

10

performance by the Lumans on the contract did not come into effect until after the appraisal had been completed and the Lumans would have been required to pay for the home if it exceeded the notice of value assigned by Mr. Freeman. That never occurred. Under these circumstances, there was no breach of contract by the Lumans, much less a material breach.

¶ 21 Although the trial court erred by concluding that Hi-Point didn't breach the contract, despite its finding that the Lumans' termination email didn't conform to the requirements of the contract, we can't discern any error in the trial court's conclusion that the June 29 termination email wasn't a material breach of the contract.

¶ 22 A critical factual finding that supports the court's conclusion that the June 29 purported termination wasn't a material breach is that, had the home appraised at or above the purchase price, the Lumans would have purchased the home. In that regard, the court found as follows:

> Nicole Luman testified it was their intent to go through with the purchase if the house appraised for more than, or at, the purchase price. If the appraisal came in at less than the purchase price, she testified it was their intent to exercise their rights under the escape clause. The Court finds Nicole Luman's

11

testimony to be credible. She was polite, articulate and straight forward in her answers. She was exceedingly honest. At one point, Plaintiff's counsel was asking her about an interpretation of a portion of the contract. She admitted, "this is all legal mumbo jumbo to me" but also agreed she was bound by it. She admitted she could have gotten an attorney but declined to do so due to the expense. *Based on the testimony of Nicole Luman, the Court finds the Lumans would have purchased the home had the notice of value equaled or exceeded the full cost of the home.*

(Emphasis added.)

¶ 23 Indeed, up until August 17, 2022, both parties remained entrenched in their asserted positions — Hi-Point rejecting the Lumans' purported termination and demanding performance and the Lumans maintaining that the contract had been terminated. But during that intervening period when the parties were at an apparent impasse, the Lumans never failed to perform any obligation under the contract, which the court found with record support.

¶ 24 Based on this, we can't conclude that the trial court erred by finding that the Lumans didn't materially breach the contract at any point before August 17, 2022, when they invoked their rights under the VA loan escape clause.

12

## B.    Repudiation

¶ 25    On appeal, Hi-Point argues that the Lumans' June 29 termination email was a repudiation of the contract. Hi-Point also argues that, by making changes to the home so that it would be more marketable to the general public, it acted in detrimental reliance on the Lumans' repudiation. We decline to consider the merits of this contention because it wasn't preserved for our review.

¶ 26    A review of the record reveals that Hi-Point never argued repudiation in the trial court. *See Gebert v. Sears, Roebuck & Co.*, 2023 COA 107, ¶ 25 (to preserve an argument for appeal, the party must have presented the "'sum and substance of the argument' to the district court" (quoting *Madalena v. Zurich Am. Ins. Co.*, 2023 COA 32, ¶ 50)). Indeed, at oral argument, Hi-Point conflated the legal concepts of material breach and anticipatory repudiation. But these concepts are distinct, and Hi-Point can't preserve a repudiation argument by raising the similar, but discrete, issue of material breach. *Cf. Highlands Ranch Univ. Park, LLC, v. Uno of Highlands Ranch, Inc.*, 129 P.3d 1020, 1024 (Colo. App. 2005) (holding that a party that had materially breached a contract was entitled to notice of the breach and a period of time to cure the

13

breach but that a party that had repudiated the contract was not entitled to notice or a period to cure or to retract their repudiation). And because Hi-Point didn't argue that the Lumans repudiated the contract before the trial court, that argument isn't preserved for our review, and we won't consider it on appeal. *See GF Gaming Corp. v. Taylor*, 205 P.3d 523, 528 (Colo. App. 2009).

## C. The Lumans Could Invoke the VA Loan Escape Clause

¶ 27    Hi-Point's next contention — that the Lumans were precluded from exercising the VA loan escape clause because they materially breached the contract — depends on its claim that the court erred in finding that the Lumans didn't materially breach the contract. *See Coors v. Sec. Life of Denv. Ins. Co.*, 112 P.3d 59, 64 (Colo. 2005) (holding that the first party to materially breach a contract can't then enforce a provision of that contract against the other party). But, for the reasons disused in Part II.A.2 above, we conclude that the Lumans weren't in material breach of the contract prior to exercising their rights under the VA loan escape clause. And because they weren't in material breach at any time prior to exercising their rights under the VA loan escape clause, they weren't precluded from exercising their rights under that clause

14

when they did. Thus, the trial court didn't err in concluding that the Lumans were permitted to exercise their rights under the VA loan escape clause when they invoked it on August 17, 2022.

¶ 28 Based on this conclusion we don't need to reach the thornier issue of whether the trial court erred in concluding that, regardless of whether the Lumans were in material breach, they could still invoke the VA loan escape clause and, therefore, offer no opinion as to whether the trial court correctly applied *Leprino Foods Co. v. Factory Mutual Insurance Co.*, 653 F.3d 1121 (10th Cir. 2011). *See Anderson v. Vail Corp.*, 251 P.3d 1125, 1129 (Colo. App. 2010) (declining to address an issue raised on appeal when resolution of a different issue was dispositive and made doing so unnecessary).

### D. Good Faith and Fair Dealing

¶ 29 Hi-Point next contends that the court failed to address its contention that the Lumans violated the implied duty of fair dealing. The trial court did address this contention. The court concluded, with record support, that

> Hi-Point argues the Lumans could have used the cash they had already paid to close the gap between the contract price and the notice of value. That is true. However, Hi-Point provides no citation of authority to support the

proposition that the Lumans were required to do so and the Court is not aware of any. Hi-Point argues the Lumans never attempted to negotiate the contract price with Hi-Point after the appraisal. That is also true. Again, Hi-Point does not provide any citation of authority for the proposition that the Lumans were required to attempt to renegotiate the price and the Court is not aware of any. In addition, Wayne Intermill[, a Hi-Point representative,] testified he never made any attempts with the Lumans to renegotiate the price either. The bottom line is that, once the notice of value came in at less than the contract price, the Lumans did not have any legal obligation to go through with the purchase of the home. Their motivations for voiding the purchase contract were irrelevant.

¶ 30    "Whether a party acted in good faith is a question of fact which must be determined on a case by case basis." *New Design Constr. Co. v. Hamon Contractors, Inc.*, 215 P.3d 1172, 1181 (Colo. App. 2008) (quoting *Amoco Oil Co. v. Ervin*, 908 P.2d 493, 499 (Colo. 1995)). We perceive no error in the trial court's conclusion. Once the house appraised for less than the sales price, the plain terms of the VA loan escape clause provided that the Lumans weren't "obligated to complete the purchase of the Property." Accordingly, we conclude that the trial court did address Hi-Point's argument regarding the Lumans duty to deal in good faith — and rejected it.

16

And because the trial court's findings on this issue are supported by the record, we won't disturb them on appeal.

E.    Prevailing Party and Award of Costs

¶ 31    Next, Hi-Point argues that the trial court erred when it determined that the Lumans were the prevailing party for the purpose of awarding costs.  We aren't persuaded.

¶ 32    We review court's determination of which party is the prevailing party for an abuse of discretion.  *Anderson v. Pursell*, 244 P.3d 1188, 1194 (Colo. 2010).  A court abuses its discretion if its decision is manifestly arbitrary, unreasonable, or unfair or a misapplication of the law.  *People v. Heredia-Cobos*, 2017 COA 130, ¶ 6.  A prevailing party "must succeed on a significant issue in the litigation and achieve some of the benefits sought."  *Anderson*, 244 P.3d at 1194.  The issue the party succeeded on doesn't need to be the central issue in the case, only a significant one.  *Id.*

¶ 33    The trial court's conclusion that the Lumans were the prevailing party enjoys record support.  We have affirmed the trial court's judgment against Hi-Point on its breach of contract claim.  And that judgment resulted in the trial court awarding the Lumans $13,500 for their earnest money and land deposit — the only

17

monetary award to either party at trial. Therefore, the Lumans succeeded on at least two significant issues in the case. Thus, we discern no abuse of discretion in the trial court's conclusion that the Lumans were the prevailing party and won't disturb that conclusion on appeal.

## F. Appellate Attorney Fees

¶ 34 Finally, Hi-Point requests its appellate attorney fees and costs under section 11.4 of the contract, which provides:

> If either party becomes involved in litigation or mediation arising out of this contract or the performance thereof, the court in such litigation, or in a separate suit, shall award reasonable costs and expenses, including attorney's fees, to [Hi-Point] in the event [Hi-Point] prevails.

¶ 35 Because Hi-Point didn't prevail on appeal (or in front of the trial court), it isn't entitled to an award of its attorney fees incurred on appeal. Accordingly, Hi-Point's request is denied.

## III. Disposition

¶ 36 The judgment is affirmed.

JUDGE GROVE and JUDGE JOHNSON concur.

18