2013 COA 7

**STAN CLAUSON ASSOCIATES, INC.,
a Colorado corporation,
Plaintiff–Appellee,**

v.

**COLEMAN BROTHERS CONSTRUCTION, LLC, a Colorado limited liability company; Coleman Ranch, LLC, a Colorado limited liability company; and Dan Coleman, an individual, Defendants–Appellants.**

No. 11CA2555.

Colorado Court of Appeals,
Div. V.

Jan. 17, 2013.

Hall & Evans, L.L.C., Benton J. Barton, Peter C. Middleton, Brian Molzahn, Denver, Colorado, for Plaintiff–Appellee.

Law Office of Michele Nelson Bass, Michele Nelson Bass, Aspen, Colorado, for Defendants–Appellants.

Opinion by Judge CARPARELLI.

¶ 1 Defendants Coleman Brothers Construction, LLC, and Coleman Ranch, LLC (collectively, Coleman), appeal the entry of summary judgment in favor of plaintiff, Stan Clausen Associates, Inc. (SCA), on their negligence counterclaims. We affirm.

¶ 2 Defendant Dan Coleman also appealed, but now concedes that he does not have standing to proceed with his appeal. We, therefore, dismiss his appeal.

## I. Background

¶ 3 In a letter agreement dated August 21, 2006, SCA agreed to provide land planning and development services to Coleman regarding the Crown Mountain property. In early 2007, Coleman and SCA orally agreed that SCA would provide a development analysis for another property, located on Emma Road in Basalt, Colorado. In April and May 2007, SCA sent letters to Coleman regarding the possible subdivision and development of that property. The district court concluded that the oral agreement in 2007 contained the same terms as the August 2006 letter agreement and that the oral agreement required SCA to perform the same services for the Emma Road property as those stated in the August 2006 letter agreement for the Crown Mountain property. This conclusion is not at issue on appeal.

¶ 4 In 2009, SCA sued Coleman for breach of the agreement regarding the Emma Road property. Coleman filed counterclaims alleging that SCA had negligently provided inaccurate advice about whether the Emma Road property could be subdivided and developed, and that the county had denied the planned unit development sketch plan SCA submitted on behalf of Coleman.

¶ 5 The court granted SCA's motion for summary judgment, concluding that the economic loss rule bars Coleman's negligence counterclaims. The parties later settled SCA's claims against Coleman, but stipulated that Coleman retained its negligence claims and could appeal the court's dismissal under the economic loss rule.

## II. Standard of Review

¶ 6 Summary judgment is a drastic remedy that is appropriate only when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Murry v. GuideOne Specialty Mut. Ins. Co.*, 194 P.3d 489, 491 (Colo.App.2008); *see* C.R.C.P. 56(c). We review de novo a district court's entry of summary judgment.

*Arthur v. City & County of Denver,* 198 P.3d 1285, 1286 (Colo.App.2008).

### III. The Economic Loss Rule

�decor1;¶ 7 Under the economic loss rule, "a party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law." *Town of Alma v. AZCO Constr., Inc.,* 10 P.3d 1256, 1264 (Colo.2000). The rule "prevents recovery for negligence when the duty breached is a contractual duty and the harm incurred is the result of failure of the purpose of the contract." *Jardel Enterprises, Inc. v. Triconsultants, Inc.* 770 P.2d 1301, 1303 (Colo.App.1988). The rule preserves the boundary between contract law and tort law and protects parties' bargained-for rights and obligations by barring tort actions when the contract provides a remedy for an exclusively economic harm. *AZCO Constr., Inc.,* 10 P.3d at 1262.

▮ ¶ 8 When determining whether the economic loss rule bars a claim, we must identify the tort duties alleged in the claim and the alleged tortfeasor's duties under the contract. We must also determine whether the act or omission alleged to have breached the tort duty would also constitute a material breach of the contract. If the alleged duty exists under the contract and the alleged breach would constitute a material breach of the contract, the economic loss rule bars the tort claim. If the alleged duty exists independent of the contract and would not constitute a material breach of the contract, the rule does not bar the tort claim. *A Good Time Rental, LLC v. First American Title Agency, Inc.,* 259 P.3d 534, 537 (Colo.App. 2011); *see also BRW, Inc. v. Dufficy & Sons, Inc.,* 99 P.3d 66, 74 (Colo.2004); *AZCO Constr., Inc.,* 10 P.3d at 1263.

▮ ¶ 9 When determining whether an act or omission would constitute a material breach of a contract, courts consider the importance or seriousness of the breach and the likelihood that the complaining party has received or will receive substantial performance under the contract. *Interbank Invs., L.L.C. v. Vail Valley Consol. Water Dist.,* 12 P.3d 1224, 1228 (Colo.App.2000). A party has substantially performed when the other party has substantially received the expected benefit of the contract. Deviation from contract duties in trifling particulars that do not materially detract from the benefits the obligee would have derived from literal performance does not constitute a material breach. *Newcomb v. Schaeffler,* 131 Colo. 56, 62, 279 P.2d 409, 412 (1955). Failure to substantially perform constitutes a breach of contract. *Western Distributing Co. v. Diodosio,* 841 P.2d 1053, 1058 (Colo.1992).

### IV. Duties of Professionals

▮ ¶ 10 Professionals are held to duties and standards of care independent of those established by contracts for their services. Professional standards of care reflect the policy that members of professions must do their work not just reasonably well, but rather "in a manner consistent with members of the profession in good standing." *Command Commc'ns, Inc. v. Fritz Cos.,* 36 P.3d 182, 189 (Colo.App.2001). If a contract for professional services does not explicitly adopt the professional standard of care, and Colorado law identifies the service provider as a professional, fulfillment of the professional standard of care is a duty that is independent of the services agreement, and the economic loss rule will not bar a claim for breach of the professional duty. *See BRW, Inc.,* 99 P.3d at 74 (economic loss rule barred professional tort claim where contract explicitly adopted the "usual and customary professional standards [of care]").

¶ 11 Coleman does not identify, and we have not found, a Colorado case that holds a land planner to a professional standard of care. Service providers that have duties independent of their contracts, which are held to professional standards of care, are identified in title 12 of the Colorado Revised Statutes. *See* §§ 12–1.5–101 to –71–104, C.R.S. 2012. Title 12 lists more than forty-five such service providers. These include, for example, accountants, attorneys, electricians, engineers, surveyors, architects, various health care professionals, real estate brokers, and veterinarians, all of which are regulated by the state through licensing and certification. *See, e.g.,* § 12–2–101.

▮▮▮ ¶ 12 When determining whether to recognize the existence of a common law duty, courts consider "the risk involved, the foreseeability and likelihood of injury as weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against injury or harm, and the consequences of placing the burden upon the actor." *Smith v. City & County of Denver*, 726 P.2d 1125, 1127 (Colo.1986).

## V. Discussion

¶ 13 Coleman contends that the district court erred when it ruled that the economic loss rule barred its negligence counterclaims. Specifically, Coleman argues that (1) the district court did not use the correct legal analysis to determine whether the rule barred its claims; (2) the proper analysis shows that the rule does not bar them; and (3) Dan Coleman's testimony about his understanding of the August 21, 2006 letter agreement raised a material issue of fact sufficient to defeat the motion for summary judgment.

¶ 14 We are not persuaded by these contentions. Rather, we conclude that Coleman's counterclaims essentially allege that SCA failed to substantially perform its duties under the August 21, 2006 letter agreement, and, thus, that it does not allege a breach of any duty independent of that agreement.

### A. The August 21, 2006 Letter

¶ 15 In its motion for summary judgment, SCA argued that the scope of its obligations with regard to the Emma Road property arose from the August 21, 2006 letter agreement. In the August 21, 2006 letter, SCA agreed to

- facilitate the approval process to develop the property;
- provide site planning, landscape architecture, and permitting services; and
- work with the county commissioners, the review agency responsible for granting all necessary redevelopment approvals.

¶ 16 The agreement also listed specific services SCA was to provide in each of the three phases of the application and planning process:

- "Assessment and Application Development";

- "County Staff Review and Hearing Process"; and
- "Post Approval Activities."

¶ 17 The agreement specified that SCA's "sole obligation is to make a good faith effort to present the project in the application and hearing process in a manner that is responsive to the code and other identified issues." It explicitly excluded express and implied warranties "as to the acceptance of any project proposal in the land use approval process."

¶ 18 Coleman argued that the agreement focused primarily on the financial relationship, billings, and payments, and not on SCA's professional duty to Coleman. It analogized the agreement to an attorney retainer agreement, and argued that the 2006 agreement did not contain (1) any contractual provisions discussing SCA's duty to provide competent professional planning work; (2) any allocation of the risk that SCA might perform "negligent professional work"; or (3) any guarantee of SCA's work. On these premises, Coleman argued the agreement "did not and could not relieve SCA of its independent duty to act without negligence in providing professional services."

### B. Coleman's Counterclaims

¶ 19 Coleman's counterclaims alleged that SCA

- negligently drafted a letter dated May 25, 2007 that
  - "contained a cursory and faulty analysis of the applicable zoning ... and the potential for development" of the property;
  - "contained blatantly incorrect information and analysis";
  - "did not contain any cautionary risk analysis and did not contain enough basic research information to allow a prudent purchaser to make a reasonable decision";
- presented design work at county hearings that was "juvenile";
- provided presentations that were not "state of the art";
- developed presentations at the "11th hour"; and

- missed deadlines.

### C. Court's Ruling

¶ 20 The district court granted summary judgment in favor of SCA on Coleman's negligence counterclaims, holding, among other things, that there is "no recognized common law duty of care owed by a land planner to anyone." It also concluded that SCA

- "had a duty to perform certain tasks in connection with site assessment, application development and going through the land planning process [in Basalt] through the final hearing on the application";
- had "the expressed duty to 'make a good faith effort to present the project in the application and hearing process in a manner that is responsive to the code and other identified issues'"; and
- owed an "implied contractual duty of good faith and fair dealing."

¶ 21 The court rejected Coleman's assertion "that there is a material issue of fact as to whether [SCA's] duty under the [c]ontracts was limited to the duty to make a good faith effort to present the project in the application process in a manner that is responsive to the code and other identified issues." The court also rejected Coleman's assertion that the affidavit of Sidney Fox, Coleman's expert witness, created an issue of material fact, and, instead, concluded that the affidavit raised a legal issue.

### VI. Analysis

¶ 22 Coleman's allegations that SCA's work was inaccurate, "juvenile," not "state of the art," rushed, and late are all assertions that SCA failed to substantially perform its duties under the contract. Therefore, these allegations may give rise to a breach of contract claim. They do not, however, give rise to claims independent of the contract.

¶ 23 We also conclude that SCA does not owe Coleman a duty independent of the agreement. Land planning is not a profession that is held to an independent duty and standard of care under any Colorado statute, nor have land planners otherwise been held to such a duty or standard at common law in our state. *See, e.g.,* §§ 12–5–101, –25–101, –33–101, C.R.S.2012 (attorneys; engineers,

surveyors, and architects; and chiropractors are licensed professionals). Coleman does not identify any Colorado authority holding land planners to such a standard, and we have found none. *See Town of Breckenridge v. Golforce, Inc.,* 851 P.2d 214 (Colo.App. 1992) (finding no case or statute in Colorado expressly designating golf course landscapers, coordinators, or designers as professionals and declining to so designate them).

¶ 24 Having considered the economic risks involved in land planning, the foreseeability and likelihood of economic loss, the burden on the developer to guard against the risks and possible loss, and the consequences of placing the burden upon land planners, we decline to recognize, for the first time, an independent professional duty of care for land planners.

¶ 25 We are not persuaded otherwise by Coleman's argument that *Capper v. Gates,* 193 W.Va. 9, 454 S.E.2d 54 (1994), is directly on point. There, the plaintiff hired a licensed surveyor to handle a subdivision approval process. The Supreme Court of Appeals of West Virginia observed that the defendant was licensed by the state as a surveyor, and held himself out as such. The court held that the surveyor was engaged "in a trade, namely land development consultation," that "[i]n the process of carrying out this trade, he employed his skills as a land surveyor," and that he "had to use his professional judgment as a land surveyor to prepare the project's lay-out." *Id.* at 15, 454 S.E.2d at 60. The supreme court concluded that the trial court had not erred when it instructed the jury that the surveyor "should be judged by the standard of care that a reasonably prudent surveyor and land development consultant would have applied with respect to the ... development project." *Id.* at 15–16, 454 S.E.2d at 60–61. Here, however, unlike the surveyor in West Virginia, there is no evidence that SCA holds a professional license or state-issued professional certification.

¶ 26 We also reject Coleman's contention that the American Institute of Certified Planners (AICP) Code of Ethics and Professional Conduct establishes a professional standard of care for land planners.

In Colorado, trade organization standards do not ordinarily establish a legally enforceable standard of care. *See Hamon Contractors, Inc. v. Carter & Burgess, Inc.*, 229 P.3d 282, 293 (Colo.App.2009). In addition, an expert's opinion as to the best practices and ethics of a type of service does not necessarily establish a legally enforceable duty of care independent of the applicable service agreement. *Id.* at 296; *see also State Bd. of Dental Examiners v. Savelle*, 90 Colo. 177, 185, 8 P.2d 693, 696 (1932) (distinguishing between a violation of professional ethics and a breach of a legal duty). Accordingly, we conclude that the AICP code does not establish a legal duty or an enforceable standard of care independent of those in the agreement. Thus, we also reject Coleman's contention that the district court erred when it did not determine the duty owed by nationally certified AICP land planners.

¶ 27 Because the allegedly negligent actions of which Coleman complains provide a basis for a breach of contract claim, and there is no duty of care independent of the parties' agreement, we conclude that the district court did not err when it applied the economic loss rule to bar Coleman's negligence counterclaims.

¶ 28 In addition, like the district court, we conclude that Coleman's counterclaims alleging that SCA owed a professional duty present a question of law, not an issue of material fact. Thus, there is no issue of material fact, and the district court did not err when it granted the motion for summary judgment.

¶ 29 Given our conclusions, we need not address Coleman's contention that the "disclaimer" language in the August 21, 2006 letter agreement inappropriately eliminated the contractual duty of care.

### VII. Conclusion

¶ 30 The district court did not err when it ruled that the economic loss rule barred Coleman's negligence counterclaims against SCA. SCA had a duty to substantially perform its obligations under the August 21, 2006 agreement. There were no legal duties independent of that agreement. Therefore, the rule bars Coleman's negligence counterclaims to recover the economic damages it allegedly suffered.

¶ 31 Dan Coleman's appeal is dismissed. The judgment is affirmed.

Judge MILLER and Judge FOX concur.